(No. 6952    March 24, 1942)

CARSTENS PACKING COMPANY, a corporation, Appellant, v. INDUSTRIAL ACCIDENT BOARD OF THE STATE OF IDAHO, Respondent.

(123 Pac. (2d) 1001)

614

Delana & Delana, for Appellant.

Bert H. Miller, Attorney General, and Thos. M. Robertson, Jr., Assistant Attorney General, for Respondent.

MORGAN J.—Appellant operates a meat packing plant at Tacoma, and another at Spokane, Washington. It operates a 37,000 acre cattle ranch in Montana and a ten acre tract, three acre tract and seven acre tract of land near Kimberly, and a twenty-eight acre tract near Jerome, Idaho. The Idaho land is used as lots for feeding and fattening cattle, sheep and hogs, except eight acres of

the twenty-eight acre tract on which appellant grows sugar beets and potatoes.

Commencing with 1935 and continuing since then, appellant has annually shipped an average of five hundred feeder cattle from its Montana ranch to its feed lots in Idaho where they have been fed, fattened and prepared for market. Feeder cattle, in addition to those brought from the Montana ranch, have been purchased, fed and prepared for market at the Idaho yards. Sheep and hogs have also been purchased by appellant and fattened and prepared for market at said yards. About 50% of the livestock fattened at appellant's feed yards are shipped to its packing plants, the other half being sold.

Respondent has exacted of appellant and appellant has paid, under protest, $2,023.39, as contributions to the Unemployment Compensation Fund for the years 1936 to and including the first quarter of 1941. Appellant petitioned respondent for repayment of the money paid under protest. The Unemployment Compensation Division of the Industrial Accident Board answered the petition and respondent, after a hearing, made findings of fact and conclusions of law and entered the following order:

"WHEREFORE, By reason of the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED that the Unemployment Compensation Division of the Industrial Accident Board or any other agency of the State of Idaho in the possession of Unemployment Compensation Funds, do pay and refund to the Carstens Packing Company the sum of $303.51, being 15% of the amount of all taxes paid by petitioner for employment of services rendered to it in connection with its livestock feeding operations in Idaho and representing the amount of taxes paid for employment of services rendered petitioner in connection with the feeding and fattening of livestock raised on its Montana ranch and in connection with the herding and tending of livestock on farms."

This appeal is from the order.

Among the findings of fact are the following:

"VII. That of the employment hired by the petitioner in connection with its feeding activities, approximately

15% of such employment is used for the feeding and fattening of the cattle shipped in from petitioner's Montana ranch and for the tending and herding of livestock upon the said farms in the communities where said feed lots are located."

"VIII. That with the exception of the 500 head of cattle annually imported from petitioner's Montana ranch, all of the cattle, sheep and hogs fed and fattened by petitioner are purchased by petitioner either directly or indirectly from the raisers and producers of such livestock."

"XI. That the operation of the feed lots by the petitioner are integrated with the petitioner's meat packing business to the extent that it is able to buy and have on reserve fattened livestock as a 'hedge' against a fluctuating livestock market, and that such a hedge is desirable to the petitioner in fulfilling long term contracts for supplying meat to the United States Government and other large and consistent consumers."

"XII. That the livestock feeding operations of the petitioner as carried on at its feed lots are not carried on on a farm, and services rendered to the petitioner by its employees at its feed lots are not services rendered on a farm."

The conclusions of law are:

"I. The services rendered to the petitioner in connection with the feeding and fattening in Idaho of livestock raised upon its Montana ranch are agricultural labor within the meaning of the Unemployment Compensation Law. Any taxes or contributions assessed or collected on wages paid by petitioner for such services have been improperly collected and should be refunded to the petitioner."

"II. The services rendered to the petitioner in connection with the tending and herding of livestock, foraging and pasturing upon farm lands in Idaho are agricultural labor within the meaning of the Unemployment Compensation Law. Any taxes or contributions assessed or collected on wages paid by petitioner for such services

have been improperly collected and should be refunded to the petitioner."

"III. The services rendered the petitioner in connection with the feeding and fattening of livestock purchased by it and fed and fattened at its feed lots in Idaho are not agricultural labor within the meaning of the Unemployment Compensation Law, but said services constitute 'covered employment' within the meaning of the Unemployment Compensation Law, and all taxes collected upon wages paid for such services have been properly collected by the Unemployment Compensation Division."

It is appellant's theory that labor employed by it in fattening feeder livestock and preparing it for market, whether raised or purchased by it, is "agricultural labor" within the meaning of the Unemployment Compensation Law, and that it is not required to make contributions to the Unemployment Compensation Fund based on wages paid to its employees for performing such labor; that it is not only entitled to the $303.51, found by respondent to be due to it as a partial refund of contributions paid under protest, but is entitled to the entire sum of $2,023.39 exacted from and paid by it.

The same jurisdictional questions exist in this case as are mentioned in *Batt v. Unemployment Compensation Division of Industrial Accident Board of Idaho*, 63 Ida. 572, 123 Pac. (2d) 1004, and the reasons stated in that case, for not deciding said questions, exist in this one. Therefore, questions which, if properly presented, might be held to defeat the jurisdiction of the board and of this court, will not be discussed or decided in this opinion.

The question before us for decision is as to whether or not those employed by appellant in fattening feeder livestock, which it had purchased and placed in its feed lots for that purpose, was "covered employment" or whether it was "excepted employment" within the meaning of the Unemployment Compensation Law.

The statute, applicable to that question, is to be found in Idaho 1939 Session Laws, chapt. 239, pp. 576, 577. It provides: "Sec. 18-5. EXCEPTED EMPLOYMENT; The term 'covered employment' shall not include— * * *

(f) Agricultural labor; * * *'' As pointed out in the Batt case, heretofore cited, and in *Smythe v. Phoenix,* 63 Ida. 585, 123 Pac. (2d) 1010, the 1941 Legislature amended that section, but the amendment became effective too late to apply to this case.

It will be observed the exception is of "agricultural labor," and nothing is said in the statute about farm labor or agricultural labor performed on farms. The term "agricultural labor" is much broader, and more comprehensive than is the term "farm labor." *Cook v. Massey,* (38 Ida. 264, 220 Pac. 1088, 35 A. L. R. 200.)

In *Big Wood C. Co. v. Unemployment C. Div.,* 61 Ida. 247, 253, 100 Pac. (2d) 49, 51, we said:

"In *Cook v. Massey* [cited above], this court considered the meaning of the term 'agricultural pursuits' and among other things said that it embraces 'every process and step taken and necessary to the completion of a finished farm product.'" The record in this case shows, conclusively, that feeder cattle, hogs and sheep are not finished farm products because they cannot, until properly fattened, be sold to advantage for human consumption.

One employed to feed livestock, to prepare it for market, is engaged in agricultural labor, within the meaning of the Unemployment Compensation Law and, in order that his labor be so classified, it is not necessary that it be performed on tillable farm land. In *Smythe v. Phoenix,* above cited, we said:

"The fact appellant himself did not breed and raise the lambs would not detract from the feeding and fattening as being agricultural. Respondent herein was engaged in an agricultural pursuit upon the nine acres constituting the appellant's feed lot as much as if the nine acres had been a part of any one of appellant's farms. All of the work performed for him by respondent was incidental to and a necessary part of fattening sheep for market, appellant's sole purpose as disclosed by the record, and thus exactly similar to any other livestock employer. Until they were properly fattened the lambs were not a completed farm or range product at least for slaughtering purposes."

In deciding whether one employed to assist

in fattening livestock is, in so doing, performing agricultural labor, within the meaning of the Unemployment Compensation Law, the nature of the service rendered is controlling—not the means by which the employer acquired title to the livestock.

It required exactly the same kind of labor to feed a steer raised on and shipped from appellant's Montana ranch as it did to feed one, in the same lot, purchased in Idaho, after it had reached the feeder stage of its development. If we decide an employee was performing agricultural labor when he fed the steer which appellant raised, and non-agricultural labor when he fed one which appellant had purchased, we will seek in vain for a justification for our decision.

The order appealed from is reversed and respondent is directed to refund to appellant the full sum of money exacted and collected from it as unemployment compensation taxes, or contributions.

Costs are awarded to appellant.

Givens, C.J., and Budge and Ailshie, JJ., concur.

Holden, J., dissents.